UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ELI DUNN,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>BRYCE HATCH and HATCH MARINE ENTERPRISE, LLC, in personam; the F/V SILVER BULLET, Official Number 991159, her engines, machinery, appurtenances and cargo, in rem;<br><br>　　　　　Defendants. | Case No. C14-01541-JPD<br><br>IN ADMIRALTY<br><br>ORDER GRANTING MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND TRANSFERRING CASE |

I.   INTRODUCTION AND SUMMARY CONCLUSION

Plaintiff, Eli Dunn ("Dunn"), has filed a complaint, in admiralty, *in personam* and *in rem* for wages and punitive damages. Dkt. 1. Defendants, Bryce Hatch and Hatch Marine Enterprise, LLC ("Hatch"), responded with a motion to dismiss for lack of personal jurisdiction and improper venue. Dkt. 16. On June 25, 2015, the Honorable Richard A. Jones reassigned this case to the undersigned based upon the parties' consent to proceed before a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). Dkt. 25. After careful consideration of the parties' pleadings, the governing law, and the balance of the record, the Court finds that it lacks personal jurisdiction over Hatch, and GRANTS the motion to dismiss, Dkt. 16, with transfer to Alaska or Idaho pending parties' advisement on the preferred forum.

ORDER
PAGE - 1

1                      II.     FACTS AND PROCEDURAL HISTORY

2         This is a case for wages and punitive damages arising under maritime and admiralty laws. Dkt. 1. Dunn, a resident of Oregon, Dkt. 16 at 5, worked as a crew member for Hatch on the defendant vessel F/V Silver Bullet in Bristol Bay, Alaska, from June 2013 to July 2013 during the salmon season, Dkt. 1 at 2. Dunn was "hired by Hatch over the radio when both of them were in Alaska." Dkt. 20 at 2. Dunn also asserts that he was "verbally promised" ten percent of the crewshare. Dkt. 1 at 2.

        Dunn filed this admiralty action, *in personam* and *in rem*,[1] on October 7, 2014, alleging that there "was no written contract of employment as required by 46 U.S.C. § 10601," and that he was "shorted on the 10% crewshare he was verbally promised." *Id.* at 1-2. Further, Dunn alleges that "[Hatch] forged an employment contract . . . [by] cop[ying] the signature page from a prior, valid contract of employment and chang[ing] the date to fraudulently make it appear as if [Dunn] had signed a contract for the 2013 Bristol Bay Salmon Season." *Id.* at 2. Dunn seeks "the highest crewshare paid out of the port of engagement during the summer 2013 Bristol Bay Salmon Season[, and] double wage penalties on the increased crewshare under state law, and/or punitive damages for failure to pay wages under the general maritime law." *Id.* at 3. Dunn also requests "punitive damages under the general maritime law for the defendants' forgery of an employment contract." *Id.*

        Dunn unsuccessfully attempted to serve Hatch for five months. Dkts. 7, 10, 12. Before transferring this case to the undersigned, Judge Jones found on March 31, 2015 "[t]hat evidence suggests that [Hatch] . . . [is] evading service," and granted Dunn's motion for an extension of time so that he could "serve [Hatch] by publication in accordance with Idaho

---

[1] An *in rem* action in admiralty "is brought against the vessel itself as defendant." 2 Thomas J. Schoenbaum, *Admiralty & Mar. Law* § 21-3 (5th ed. 2014). To bring an *in rem* action, the plaintiff must possess a maritime lien. *Id.* Dunn obtained a maritime lien on the defendant vessel, F/V Silver Bullet, on September 29, 2014. Dkt. 16, Ex. 1 at 16.

ORDER
PAGE - 2

1  law."² Dkt. 13.  On May 6, 2015, Hatch's attorney filed a Notice of Appearance in this matter.
2  Dkt. 14.

3  Hatch filed the instant motion to dismiss for lack of personal jurisdiction, under Federal
4  Rules of Civil Procedure 12(b)(2) and 12(b)(3), on May 7, 2015.  Dkt. 16.  In his motion,
5  Hatch contends that "Dunn was overpaid by $1,647.83, due to a clerical error by the cannery
6  processing the salmon catch[, and that] Dunn . . . caused $5,300 of damage to Hatch Marine's
7  property."  *Id.* at 5-6.  Hatch also maintains that "none of the events giving rise to this action
8  transpired in Washington" for four reasons: (1) Hatch is a resident of Idaho,³ (2) Dunn is a
9  resident of Oregon, (3) the salmon fishing happened in Alaska, and (4) the defendant vessel,
10 F/V "Silver Bullet[,] is ported in Alaska."  *Id.* at 6-7.

11 In Dunn's opposition to Hatch's motion to dismiss for lack of personal jurisdiction,
12 Dunn posits four grounds for the Court to exercise jurisdiction in this matter: (1) the F/V Silver
13 Bullet vessel has had repairs in shipyards by Lake Union and Hatch has made supply purchases
14 in Ballard or Lake Union; (2) "Dunn's wages were paid through the sale of fish to Leader
15 Creek Fisheries," which is headquartered in Ballard; (3) the F/V Silver Bullet's home/hailing
16 port is Seattle; and (4) "the alleged tort (and crime) of forgery was consummated in Seattle

---

² While evading service, Hatch filed a complaint against Dunn in the U.S. District Court of Idaho on December 4, 2014.  Dkt. 24, Ex. 1 at 2.  Hatch sought "declaratory judgment that Dunn was fully compensated for services rendered in 2013, that the lien filed by Dunn against the [F/V] Silver Bullet [wa]s void, and that any lawsuits filed by Dunn against [Hatch we]re without merit."  *Id.*  "[Hatch] also put forth an unjust enrichment claim, alleging that Dunn was overpaid in the amount of $1[,]771.47."  *Id.*  Dunn, proceeding *pro se* in the Idaho matter, filed a motion to stay or dismiss without prejudice "in favor of the earlier-filed parallel case in the Western District of Washington."  Dkt. 20, Ex. 3.  On June 16, 2015, Chief Judge B. Lynn Winmill granted Dunn's motion and dismissed the Idaho action without prejudice based upon the first-to-file rule and not an analysis of personal jurisdiction.  Dkt. 24, Ex. 1; *see Alltrade, Inc. v. Uniweld Prods., Inc.*, 946 F.2d 622, 623, 625 (9th Cir. 1991) (describing the "first-to-file rule" as "well-established" and available "when a complaint involving the same parties and issues has already been filed in another district").

³ Hatch Marine Enterprise, LLC, the second *in personam* defendant in this action, is an Idaho limited liability company.  Dkt. 16 at 6.

ORDER
PAGE - 3

when [Dunn's attorney] opened the letter from . . . Hatch containing an altered employment contract with [Dunn]'s signature superimposed." Dkt. 20 at 2.

### III. DISCUSSION

#### A. Standard of Review on a Rule 12(b)(2) Motion to Dismiss

In a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden to show that the court has jurisdiction over the defendant, but "in the absence of an evidentiary hearing, the plaintiff need only make a 'prima facie showing of jurisdictional facts to withstand the motion to dismiss.'" *Washington Shoe Co. v. A-Z Sporting Goods Inc.*, 704 F.3d 668, 671-72 (9th Cir. 2012) (quoting *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006)). "[F]or the purpose of [the prima facie] demonstration, the court resolves all disputed facts in favor of the plaintiff." *Pebble Beach Co.*, 453 F.3d at 1154 (citing *Doe v. Unocal*, 248 F.3d 915, 922 (9th Cir. 2001)). Moreover, as this is a Rule 12(b)(2) motion, Rule 12's evidence limitation to the four corners of the complaint does not apply. *See Hunter v. Sotera Def. Solutions, Inc.*, No. CV-11-292-RMP, 2012 WL 262555, at *4, n.1 (E.D. Wash. Jan. 30, 2012) (referencing Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.")).

When there is no federal statute granting personal jurisdiction, "the district court applies the law of the state in which the court sits." *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011) (citing Fed. R. Civ. P. 4(k)(1)(A)). "Washington's long-arm statute extends jurisdiction over a defendant to the fullest extent permitted by the Due Process Clause of the Fourteenth Amendment." *Washington Shoe Co.*, 704 F.3d at 672. Specifically, it provides that

> [a]ny person, whether or not a citizen or resident of this state, who in person or through an agent does any of the acts in this section enumerated, thereby submits said person . . . to the jurisdiction of the

ORDER
PAGE - 4

courts of this state as to any cause of action arising from the doing of any of said acts.

RCW 4.28.185(1). The first two acts enumerated in the statute are "[t]he transaction of any business within this state[, or] [t]he commission of a tortious act within this state." RCW 4.28.185(1)(a)-(b). However, "[t]he Due Process Clause of the Fourteenth Amendment constrains a State's authority to bind a nonresident defendant to a judgment of its courts." *Walden v. Fiore*, 571 U.S. __, 134 S. Ct. 1115, 1121 (2014) (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980)).

In order for this Court to exercise jurisdiction in accordance with due process standards, Hatch must "have certain minimum contacts with [Washington] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Washington Shoe Co.*, 704 F.3d at 672 (citation omitted). The Ninth Circuit has adopted a three-prong test to determine whether a nonresident defendant's minimum contacts are sufficient for a court to exercise specific[4] personal jurisdiction within due process requirements:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; *and*
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

---

[4] Courts can also exercise general jurisdiction over nonresident defendants, but the due process standard for general jurisdiction "requires that the defendant's contacts be of the sort that approximate physical presence." *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000) (citing *Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1331 (9th Cir. 1984) (requiring "'continuous and systematic' or 'substantial'" contacts to "constitute sufficient activity" for general jurisdiction in the forum-state)). Given the facts of this matter, this Court has no basis on which to exercise general jurisdiction over Hatch.

ORDER
PAGE - 5

1    *Id.* (emphasis added) (quoting *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124,

2    1128 (9th Cir. 2010)).  Although Hatch may satisfy the first prong of the test, as discussed

3    below, the facts do not support the second and third prongs.

4          B.      <u>Lack of Personal Jurisdiction</u>

5    The personal jurisdiction inquiry can travel two different paths in admiralty cases:

6    (1) *in personam*—against a person, not against property—similarly to civil suits, or (2) *in*

7    *rem*—"against a vessel or other maritime property."  Schoenbaum, § 21-3.  This Court cannot

8    exercise either type of jurisdiction in this case.

9          *1.      In Personam Jurisdiction*

10   To exercise *in personam* jurisdiction over Hatch in this matter, the facts of the case

11   would have to satisfy all three prongs of the specific personal jurisdiction test outlined above.

12   Dunn claims that Hatch is no exception to the "[c]ommercial fishing [enterprises] in Alaska

13   [that are] traditionally dependent upon Seattle for supplies, repairs, insurance/legal needs, and

14   off-season boat moorage."  Dkt. 20 at 2.  Assuming that Hatch has utilized services in the

15   Western District of Washington to repair ships or purchase supplies, Dunn is correct that Hatch

16   has "consummate[d] some transaction with the forum . . . thereby invoking the benefits and

17   protections of its laws."  *Washington Shoe Co.*, 704 F.3d at 672.

18   But for Hatch to be subject to specific personal jurisdiction in Washington, Dunn's

19   "claim must be one which arises out of or relates to [Hatch's] forum-related activities[,] *and*

20   the exercise of jurisdiction must . . . be reasonable."  *Id.* (emphasis added).  Dunn's claim for

21   wages does not arise out of any boat repairs or supplies Hatch purchased in the Seattle area.

22   Dunn admits that he was hired "over the radio . . . in Alaska."  Dkt. 20 at 2.  Moreover, the

23   wages he is allegedly owed were from the 2013 salmon season in Bristol Bay, Alaska.  Dkt. 1

24   at 2.  Dunn tries to connect the claim to Seattle by stating that his "wages were paid through

25   the sale of fish to Leader Creek Fisheries[, which] . . . is headquartered in the Ballard district of

26   Seattle."  Dkt. 20 at 2.  However, the website printout on which Dunn relies confirms only that

ORDER  
PAGE - 6

the fishery has offices in Seattle and Alaska, but it does not indicate that Seattle is the headquarters. *Id.*, Ex. 2.  In fact, it suggests the opposite.  It specifies that operations are only in the Seattle office from August to April.  *Id.*  Furthermore, the details listed for the Alaska office show (1) operations from April to August, during the salmon season, (2) phone and fax numbers for "Employees/Human Resources" and "Fishermen/Fleet," and (3) a map of Alaska with North Naknek designated—where the Alaska office and plant are located.  *Id.*  Even though Dunn's wages were ultimately paid through the sale of fish to Leader Creek Fisheries, it is too far of a stretch to say that Dunn's wages claim from an Alaska fishing expedition "arises out of" Washington-related activities.

Similarly, Dunn's counsel's receipt in Seattle of the allegedly forged employment contract is not sufficient to establish that Hatch "purposefully avail[ed] himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws."  *Washington Shoe Co.*, 704 F.3d at 672.  When proving whether or not the defendant meets the purposeful availment prong, the plaintiff must make a different showing depending on whether the claim sounds in tort or contract.  *Van Steenwyck v. Interamerican Mgmt. Consulting Corp.*, 834 F. Supp. 336, 340 (E.D. Wash. 1993).  "When tort claims are involved, personal jurisdiction may be proper when the defendant's only contact with the forum state is the purposeful direction of a foreign act having [a tortious] effect in the forum state."  *Id.* (citing *Roth v. Garcia Marquez*, 942 F.2d 617, 621 (9th Cir. 1991)).

Assuming facts in the light most favorable to Dunn, this Court cannot exercise jurisdiction over Hatch simply because Hatch sent to Dunn's counsel in Seattle a copy of an allegedly forged contract.[5]  As Hatch points out, Dunn has provided no authority for the

---

[5] Dunn is not arguing that the mere existence of the employment contract between the parties is sufficient to confer personal jurisdiction.  Neither Hatch nor Dunn is a Washington resident.  Dkt. 1 at 1; Dkt. 16 at 5.  Even if Dunn were a Washington resident, this Court still would not have jurisdiction over Hatch because the employment contract does not reference Washington, and the work was to be completed in Alaska.  Dkt. 16, Ex. 1 at 5-7; *see Hunter v. Sotera Def. Solutions, Inc.*, No. CV-11-292-RMP, 2012 WL 4056644, at *4 (E.D. Wash. Sept.

1 proposition that forgery is a civil tort that confers jurisdiction under the statute, or that the
2 alleged act of forgery occurs at the location where the document is "discovered."  *See* Dkt. 23.

3    Finally, it would be unreasonable for this Court to exercise jurisdiction in this matter.
4 Neither Dunn nor Hatch reside in Washington, and the events giving rise to the wage dispute
5 took place in Alaska.  Dkt. 1 at 1-2; Dkt. 16 at 5-7.  As a result, Hatch does not "have certain
6 minimum contacts with [Washington] such that the maintenance of the suit does not offend
7 'traditional notions of fair play and substantial justice.'"  *Washington Shoe Co.*, 704 F.3d at
8 672 (citation omitted).  This Court lacks *in personam* jurisdiction over Hatch.

9              *2.    In Rem Jurisdiction*

10   As a unique procedure in admiralty practice, a plaintiff may bring an *in rem* action
11 against a vessel itself as defendant.[6]  Schoenbaum, § 21-3.  "The action *in rem* allows the arrest
12 of the vessel even though the shipowner's only contact with the jurisdiction is the presence of
13 the vessel."  *Id.*  Moreover, a "prerequisite of *in rem* jurisdiction is that the [vessel] . . . must be
14 present in the district when the suit is filed or during the pendency of the action.  There is no
15 jurisdiction on the basis that a vessel was once within the district or is expected to return."  *Id.*;
16 *see also L.B. Harvey Marine, Inc. v. M/V River Arc*, 712 F.2d 458, 459 (11th Cir. 1983) ("The
17 presence of the [vessel] within a court's territorial jurisdiction is necessary before the court can
18 proceed to adjudication.").

19   Dunn alleges in his complaint that the F/V Silver Bullet "is registered in Seattle, WA,
20 has her home port in the Western District of Washington or will be found in the Western

21 _____

22 14, 2012)  (finding that a contract "executed outside Washington State," with no reference to
Washington, for work to be completed in Iraq did not "establish the minimum contacts
23 necessary to support personal jurisdiction"); *Van Steenwyck*, 834 F. Supp. at 342 (holding that
"negotiat[ing] the substance of an employment contract" in Washington with a Washington
24 resident would not suffice to confer personal jurisdiction when "the economic relationships
created by the contract were to have found their fulfillment outside [Washington]").
25   [6] To bring an *in rem* action, the plaintiff must possess a maritime lien.  Schoenbaum,
§ 21-3.   Dunn obtained a maritime lien on the defendant vessel, F/V Silver Bullet, on
26 September 29, 2014.  Dkt. 16, Ex. 1 at 16.

ORDER
PAGE - 8

District of Washington during the pendency of this action." Dkt. 1 at 2. However, Hatch swears in his affidavit supporting the motion to dismiss that the F/V Silver Bullet is "currently ported in Naknek, Alaska." Dkt. 16, Ex. 1 at 2. In Dunn's opposition to the motion to dismiss, he states that "Hatch forgets to mention that the F/V Silver Bullet has the word SEATTLE emblazoned on its stern as her home port," and to further support his assertion, he provides a "Coast Guard Vessel Documentation" that lists Seattle, Washington as the vessel's hailing port. Dkt. 20 at 2; *Id.*, Ex. 1. However, this Court's Coast Guard vessel documentation query shows that as of May 20, 2015, the F/V Silver Bullet has Coeur d'Alene, Idaho listed as its hailing port.[7] Since the Court has received no evidence[8] that the F/V Silver Bullet was ported in the Western District of Washington at the time that Dunn filed his suit or has been present in the district during the pendency of this action, this Court cannot exercise *in rem* jurisdiction over the vessel. *See* Schoenbaum, § 21-3; *L.B. Harvey Marine, Inc.*, 712 F.2d at 459.

      C.    <u>Improper Venue</u>

In the alternative, Hatch argues that the matter should be transferred to the United States District Court for Idaho because Washington is the improper venue. Dkt. 16 at 11-12. Although the Federal Rules of Civil Procedure have applied to admiralty cases since 1966, some procedural differences between civil cases and admiralty cases persist. *Coronel v. AK Victory*, 1 F. Supp. 3d 1175, 1183 (W.D. Wash. 2014) (recognizing that Rule 82 does not impose a venue restriction on admiralty cases). Specifically, Rule 82 provides that "[a]n admiralty or maritime claim under Rule 9(h) is not a civil action for purposes of 28 U.S.C. §§ 1391-1392." *See Cashman Equip. Corp. v. Kimmins Contracting Corp.*, No. Civ.A. 03-10463-DPW, 2004 WL 32961, at *4 (D. Mass. Jan. 5, 2004) (noting that 28 U.S.C. § 1391

---

[7] *Coast Guard Vessel Documentation*, NOAA Office of Sci. & Tech. Nat'l Marine Fisheries Serv., http://www.st.nmfs.noaa.gov/pls/webpls/cgv_pkg.vessel_id_list?vessel_id_in=991159 (last visited July 8, 2015).

[8] As discussed previously, pursuant to Rule 12(d), the Court is not limited to the four corners of the complaint.

ORDER
PAGE - 9

1  "does not apply to admiralty or maritime actions"). One court has held that "the proper
2  interpretation of Rule 82 is that for claims in admiralty, venue lies wherever a district court has
3  jurisdiction over the defendant." *Richoux v. R & G Shrimp Co.*, 126 F. Supp. 2d 1007, 1009
4  (S.D. Tex. 2000). As previously discussed, the Court does not have jurisdiction over Hatch,
5  therefore venue is improper in the Western District of Washington.

6  "Under 28 U.S.C. § 1631, a court can transfer an action to a district where jurisdiction
7  is proper in order to cure a lack of jurisdiction in the district where the case was first brought."
8  *Kennedy v. Phillips*, No. C11-1231-MJP, 2012 WL 261612, at *4 (W.D. Wash. Jan. 30, 2012).
9  But the court "may only transfer the action to a district in which the action 'could have been
10 brought.'" *Id.* (quoting 28 U.S.C. § 1631). The facts of this case suggest that jurisdiction may
11 be proper in either Alaska or Idaho. Dkt. 16 at 5.

12  As mentioned above, the U.S. District Court of Idaho dismissed Hatch's Idaho-filed
13 action without prejudice on June 16, 2015, based upon an assumption that Hatch's business
14 dealings in Washington, as well as the F/V Silver Bullet's alleged Seattle home port, were
15 enough to confer personal jurisdiction in this Court. Dkt. 24, Ex. 1 at 6-7. Specifically, having
16 determined that Hatch's "inconvenience in litigating the dispute in Washington does not
17 outweigh Dunn's interest in choosing a forum," Chief Judge Winmill found that "the first-to-
18 file rule applies in the instant case[, and] [e]fficiency and judicial resources would be best
19 served by dismissing this action without prejudice." *Id.* at 7. The first-to-file rule implicitly
20 relies on the fact that both actions were filed in courts that could exercise jurisdiction over the
21 parties. *See Pacesetter Sys., Inc. v. Medtronic, Inc.*, 678 F.2d 93, 95 (9th Cir. 1982) ("[W]hen
22 two identical actions are filed in courts of concurrent jurisdiction, *the court which first
23 acquired jurisdiction* should try the lawsuit and no purpose would be served by proceeding
24 with a second action.") (emphasis added). Furthermore, "the court in which the first filed case
25 was brought decides the question of whether or not the first filed rule . . . applies." *Longview
26 Fibre Paper & Packaging, Inc. v. Travelers Indem. Co.*, No. C06-5666FDB, 2007 WL 601226,

ORDER
PAGE - 10

1  at *1 (W.D. Wash. Feb. 22, 2007) (citation omitted).  When implementing the first-to-file rule,
2  "federal courts commonly stay the second filed action to afford the court of the first filed
3  action an opportunity to decide whether to keep the dispute[; therefore] [i]f the 'first filed'
4  court does not keep the dispute, the stay in the second filed action can be subsequently lifted."
5  *Longview Fibre Paper & Packaging, Inc.*, 2007 WL 601226, at *1 (citing *Alltrade*, 946 F.2d
6  622); *see also Tanksley v. Nw. Airlines & Air Line Pilots Assoc.*, No. C07-1227RSL, 2008 WL
7  691685, at *1 (W.D. Wash. Mar. 12, 2008) (quoting *SAES Getters S.p.A. v. Aeronex, Inc.*, 219
8  F. Supp. 2d 1081, 1089 (S.D. Cal. 2002)).

9       Here, the first-to-file rule does not apply because Washington and Idaho do not both
10 have jurisdiction over Hatch.  In addition, instead of staying Hatch's Idaho-filed action, the
11 U.S. District Court of Idaho dismissed the action without prejudice.  Dkt. 24, Ex. 1 at 7, n.1
12 ("In cases where there is a likelihood that the first-filed action will be dismissed—for example,
13 when there are statute of limitations issues at play—the action should be stayed rather than
14 dismissed. . . . There is no indication that that scenario is present here.") (internal citation
15 omitted).

16      The Court is unaware of any issues regarding the impact, if any, of the statute of
17 limitations.  This Court does not have jurisdiction.  Hatch appeared to Judge Jones to be
18 evading service.  Dkt. 13.  Dunn will not be required to re-serve Hatch.  The only remaining
19 issue is whether this case should be transferred to Alaska or Idaho.  The parties are directed to
20 discuss this and advise the Court of their respective positions within 10 days of the date of this
21 Order.

22                              IV.    CONCLUSION

23      For all of the foregoing reasons, the Court GRANTS Hatch's motion to dismiss, Dkt.
24 16, and pending the parties' advisement on the preferred forum, will transfer the case to Alaska
25 or Idaho.
26 / /

ORDER
PAGE - 11

1  The Clerk of the Court is ordered to provide copies of this Order to all counsel of
2  record.
3  DATED this 22nd day of July, 2015.

   *James P. Donohue*
   _____
   JAMES P. DONOHUE
   Chief United States Magistrate Judge

ORDER
PAGE - 12